THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
W.V. Haas, Jr., (Individually and as Trustee), Appellant,
v.
John E. Haas, Susan K.H. Betenbaugh, (Individually and as Trustees), Stephen D. Gillespie, Laura G. Greer, and David V.
Betenbaugh,
Of whom John E. Haas and Susan K.H. Betenbaugh are the,
Respondents.
 
 
 

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2005-UP-273
Heard March 9, 2005  Filed April 8, 2005

AFFIRMED

 
 
 
Laurel R.S. Blair, of Greenville, for Appellant.
Stanley Earl McLeod, of Greenville, for Respondents.
 
 
 

PER CURIAM:  This is an appeal by a co-trustee of an order approving a proposed division of the assets of a testamentary trust.  We affirm. 
FACTS
In 1987, W.V. Haas died testate, survived by his widow, Nell P. Haas, and four children, W.V. Haas, Jr., (Appellant) Jean H. Gillespie, John E. Haas (John), and Susan K.H. Betenbaugh (Betenbaugh).[1]  Haass will established two testamentary trusts, one for Mrs. Haas and the other for Haass children.  Pursuant to the terms of the will, the trusts were to be merged after the death of Haass widow and then distributed in four equal shares:  one share outright to Appellant, one share outright to Gillespie, one share outright to John, and one share to be held in trust by the co-trustees for the benefit of Betenbaugh and her son.[2]  
In his will, Haas specified how the funds held in trust for Betenbaugh and her son were to be handled by the co-trustees.  The relevant provision stated as follows:  My Trustees . . . shall encroach upon the corpus of the trust for up to One Thousand ($1,000) Dollars per month on a non-cumulative basis for the personal living expenses of my daughter, Susan K.H. Betenbaugh.  He also named his four children as co-executors and co-trustees of his estate, with the proviso that John Edward Haas, serve as Chairman of my Co-Executors and Co-Trustees and, in the event of any deadlock in voting . . . John Edward Haas . . . shall cast the deciding ballot and shall unilaterally determine the course of action to be taken and shall break such deadlock.[3]  
As contemplated in the will, the trusts were merged after Mrs. Haass death in 1999; however, the co-trustees could not agree on the final distribution of trust assets or on a $12,000 distribution to Betenbaugh.  Because of these disagreements, Respondents filed this action in probate court requesting approval of their proposed division of the trust.  Appellant answered and counterclaimed, alleging Respondents breached their fiduciary duty in dividing the trust assets and in allowing the distribution to Betenbaugh.  Appellant also sought an accounting by Respondents and a review of compensation and fees.
The probate court found the trust was ripe for termination and distribution according to Haass will.  Pursuant to South Carolina Code section 62-7-707,[4] the court found that Respondents appear to constitute a majority of Trustees and may therefore divide and distribute the Trust . . . assets into four (4) equal shares, pursuant to and in compliance with Haass will and required them to provide a written accounting to all trust beneficiaries.  As to the division itself, the probate court ordered that (1) for valuation purposes, the appraised value of the real property trust assets would be used without any adjustments for capital gains or real estate commissions; (2) an appraisal of trust property at Lake Hartwell would be adjusted before the final distribution to account for lots sold after the prior appraisal and for utility development costs; and (3) trust property consisting of Pawleys Island beachfront real estate could be distributed to Respondents and Gillespies children because of their strong interest in that asset.  Finally, the court upheld the $12,000 distribution to Betenbaugh, finding it was neither a violation of the trust terms nor a breach of fiduciary duty.[5]  
Appellant then filed a motion to alter or amend the judgment of the probate court and a motion for sanctions, alleging in part:  (1) the probate court erred in finding Respondents did not breach their fiduciary duties or violate the terms of the trust; (2) Respondents improperly used hindsight to distribute stocks based on what their market values were before the distribution; (3) Respondents did not divide the trust into four equal shares; and (4) Respondents intentionally disregarded an Architectural Review Committee concern about one of the properties distributed to Appellant.  The motion was held in abeyance, and the court required Respondents to complete the accounting and to address Appellants concerns.  
After a hearing on the motions, the probate court issued an order denying all matters raised in Appellants motions except for the Architectural Review Committee issue.  The circuit court affirmed the findings of the probate court.  This appeal followed. 
STANDARD OF REVIEW
If the proceeding in the probate court is in the nature of an action at law, the circuit court may not disturb the probate courts findings of fact unless a review of the record discloses there is no evidence to support them.[6]  On the other hand, if the probate proceeding is equitable in nature, the circuit court, on appeal, may make factual findings according to its own view of the preponderance of the evidence.[7]  When both the probate court and the circuit court, however, have considered the equitable claims and agree on the resolution of the issues, this court will not disturb their findings unless there is no evidence to support them in the record.[8]  
Here, then, we will reverse a factual finding by the probate court only if the record has no evidence to support it.
LAW/ANALYSIS
1.  We find no merit to Appellants contention that the $12,000 distribution to Betenbaugh was a cumulative distribution in violation of the trust terms. 
Although the trust specified that the distributions to Betenbaugh were to be non-cumulative, there is nothing in the trust terms that prohibited the distributions to be retained in the trust until such time as a full disbursement would be made.  Respondents both testified that Betenbaugh requested the $1,000 distributions but asked that they be deferred so she could save up enough money to purchase a car.  John testified that he made the distribution at Betenbaughs request and that Respondents, as two of the three co-trustees, approved the distribution.  Furthermore, Appellant himself testified that, although he did not recall Betenbaughs request, it was likely that he would have agreed to the distributions.  
2.  Appellant contends Respondents ignored assumptions and qualifications on the appraisal when making the distribution.  We disagree.
The trust clearly required the parties to divide the trust into four equal shares.  To achieve an even distribution of the trust property, the parties obtained an appraisal of all the property.  
Appellant points to four main reasons the use of the appraisal values was improper.  First, the appraisal indicated one of the properties had a blocked easement, which would prevent access to the water.  Second, he asserts the values used in the appraisal should have been adjusted because the property would no longer be an entire development but would be split among multiple owners.  Third, he maintains the property allocated to him has been affected by grading done to the remaining properties.  Lastly, he argues there are other water access problems with the property that would prevent the appraisals from being accurate.
We first note Appellant failed to provide any evidence of the appropriate values to assign to the properties.  He has not shown how any of the property values would be affected by changes to the appraisal.  Second, we find there is ample evidence in the record to support the probate courts findings that the issues raised did not adversely affect the distribution or constitute breaches by Respondents of their fiduciary duty.
Although the appraisal indicated the interior lots owned by the trust may not have water access because of a fence erected by an adjoining landowner, John testified there was no fence blocking the access.  Appellant himself also testified the walkway is open and free from obstructions.  Furthermore, John testified the trust was not involved in litigation over the validity of the easement and, for the easement to be deemed abandoned, the trust would have to be a party to any litigation regarding the quality of the easement.
At trial, Appellant testified the value of the property would change if there were multiple owners trying to sell the same property.   Although the appraiser appeared to agree with this assertion, Appellant, when suggesting a division of the property, testified if one party owned the waterfront lots and another owned the interior lots, there should be no dilution of value as the parties would not be selling identical properties.  He testified:  We wouldnt be competing.  Id be selling bananas and theyd be selling onions or vice versa.  The property was divided so there would be little to no competition among the owners to sell their lots.  In addition, neither Robinson nor Appellant attempted to quantify the diminution in the value of the property that would result from multiple ownership.
Respondents had some of the lots graded so the placement of power lines would not be disrupted when the property was developed, causing driveways and other roads to be cut into the ground.  Appellant presented evidence of runoff resulting from this grading but never presented any testimony regarding either the costs to fix the runoff or the diminution in the value of the property as a result of the runoff.  As a result, there could only be speculation as to the change in the value of the property from its appraised value.[9]
According to the appraisal, the remaining real property Appellant was to receive was a waterfront lot for which a pier permit could not be obtained because the neighboring lots had already received permits.  The inability to obtain a pier permit was figured into the valuation, and Appellant has not presented any evidence suggesting it was improperly disregarded in the appraisal.  
We therefore hold the probate court and the circuit court properly determined Respondents committed no breach of fiduciary duty in dividing the property based upon the appraised values.
3.  We find no merit to Appellants contention that the division was improper because Respondents failed to give him the lots he expressed a desire to own and instead kept the property for the partnership they created to contain their shares.
The order of the probate court dated August 29, 2002, provided the distribution was to comply with S.C. Code Ann. Section 62-7-302.  Section 62-7-302 provides that [a] A trustee shall consider in investing and managing trust assets those circumstances of the following as are relevant to the trust or its beneficiaries: . . .(h) an assets special relationship or special value to the purposes of the trust or to one or more of the beneficiaries.[10]
Although at trial Appellant testified he desired the waterfront lots instead of interior lots in Huntington Heights, he also acknowledged he had no emotional ties to any of the property and would be satisfied to sell all the property and receive cash.  This admission is sufficient to support the probate courts rejection of Appellants assertion that Respondents failed to consider any special relationship between Appellant and the particular properties he desired to receive.
4.  Appellant contends Respondents distributed the stocks in the trust using market hindsight in order to distribute stocks with the greatest loss to him while retaining the other stocks for themselves.  In support of this argument, he notes that the stock he received in the distribution suffered a loss of 3.5 per cent whereas the stocks allocated to the other beneficiaries suffered a loss of only 1.8 per cent.  The probate court, however, found there was no basis for this assertion.  We hold the record supports this finding.
John described the method used for distributing the stocks.  He maintained the stocks to be distributed were selected on July 12.  Then using the valuations based on the July 30 statements, the final allocations of stocks were made.  He testified the accounts were not zeroed out until August and a dividend was received and distributed in September.  Specifically, John was asked Did you look back at the stock values in order to determine how to attribute more losses to [Appellant]?  He responded:

We never looked back except for that reason.  We looked back to the July 30th time.  We never looked forward to see how it - - how it was affected at that time, and couldnt - - matter of fact, couldnt until we got the statement at the end of the month, unless you looked at it daily.  

5.  Finally, Appellant argues the probate court erred in finding Respondents did not breach their fiduciary duty in rejecting his offer of $730,000 for the Pawleys Island beach house, asserting he made a good faith offer that exceeded the appraised value of the property.  We disagree.
Appellant testified he was making the offer with the hope of altering the appraisal value for the property.  The record indicates he contacted the appraiser to determine whether an offer made before his appraisal would affect the value placed on the property.  The following colloquy explains his motives:

Q.      Okay.  And so why did you make that call to [the appraiser]?
A.      To find out if that would influence his appraisal.
Q.      So that you could get a higher value for the assets to give to the other beneficiaries?
A.      If - - - if it was going to influence the appraisal, it would have had a bearing on what - - - at what point I made the offer, yes. 

In our view, this testimony is sufficient to uphold the probate courts refusal to find that Respondents breached a fiduciary duty in refusing Appellants offer.
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  John and Betenbaugh will also be referred to collectively as Respondents.  
[2]  Betenbaughs son, David V. Betenbaugh, was a named party to the action.
[3] Gillespie died before this litigation ensued, and, although her children (Stephen D. Gillespie and Laura G. Greer) were made parties to this action, they were not co-trustees and were named in the will only as beneficiaries.
[4]  See S.C. Code Ann. § 62-7-707(a) (Supp. 2004) (providing that [a]ny power vested in three or more trustees may be exercised by a majority).
[5]  The probate court found that similar distributions to the other beneficiaries, including Appellant, did not violate the trust terms or constitute a breach of fiduciary duty.  
[6]  In re Howard, 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993).  
[7]  Id. at 361-62, 434 S.E.2d at 257-58. 
[8]  See Dean v. Kilgore, 313 S.C. 257, 260, 437 S.E.2d 154, 155-56 (Ct. App. 1993) (applying the two-judge rule to a probate court matter); cited in Geddings v. Geddings, 319 S.C. 213, 216, 460 S.E.2d 376, 378 (1995).  
[9]  Cf. Yadkin Brick Co. v. Materials Recovery Co., 339 S.C. 640, 646, 529 S.E.2d 764, 767 (Ct. App. 2000) ([B]ald allegations are insufficient to establish a claim for diminution in value, and the evidence must not be speculative as to the amount of the alleged diminution.)
[10] S.C. Code Ann. § 62-7-302(3)(h) (Supp. 2004).